Dickman, J.
For many years the defendant in error, the Singer Manufacturing Company, a corporation under the laws of the state of New Jersey, has been extensively engaged in the business of making and vending sewing machines in this and in other countries. The machines made by the company have been called and known as “Singer” sewing machines — the term embracing several varieties, which differ among themselves more or less in principle of construction, mode of operation, and results produced. Among those varieties of machines, as known to the trade, are the “ Family Singer,” the “ Medium Singer,” the “ Oscillating Shuttle Singer,” and others of different designation. They all belong to the same denomination of Singer machines, and were in the- main protected by patents covering their distinctive features. The term Singer, eo nomine, has come to be suggestive not merely of the manufacturer, but of sewing machines of a certain mechanism, character or quality, distinct in construction and mode of operation from the “Home,” “Grover & Baker,” “Wheeler & Wilson,” or other machines known to the public. It would not be claimed that the name Singer is now associated with any machine for family use, or other work, that is constructed upon a different principle from that governing any of the various Singer machines, so called. ■
It is urged, however, that as the machines originally got their names because of the manufacturer, first, I. M. Singer & Co., and later the Singer Corporation, the defendant in error has acquired an exclusive property in the name — that the name has become a trade name to indicate machines of the company’s manufacture, and has been so recognized by the public. And it is further insisted, that there is no *135 mechanical device, combination, or principle of construction common to the Singer machines, to which the name could refer, and thus become, as it were, generic in its character, and free to the use of all manufacturers and venders after the expiration of the Singer patents. But, granting that there may be several distinct species of the Singer machines, with no peculiar mechanism or principle of action common to them all, yet each species constitutes a distinctive type or class, with certain special characteristics of outward form and internal construction, and bearing the name Singer, to distinguish it from others of different make and properties. Singer Manuf’g Co. v. Loog, Lord Selborne, L. C., 8 Appeal Cases. H. L. (E.), 15.
Descriptive as the name Singer is of machines of a really distinctive character in their construction and principle of operation, when the patents protecting them expired, the right to use that name accompanied the right to make and sell the machines. It would be a poor return for the exclusive privilege which the public gives for a long period to the patentee, if after the expiration of his patent, he shall be allowed to virtually perpetuate his monopoly, in a measure, by preventing all others from using the name, which will describe and make known the invention that has become dedicated to the public.
In Singer Manuf’g Co. v. Stanage, 6 Fed. Rep., 279, it was held, that when a patented article is known in the market by any specific designation, whether of the name of the patentee or otherwise, every person, at the expiration of the patent, has a right to manufacture and vend the same, under the designation thereof by which it was known to the public. The original patentee or his assignees acquire no right to the exclusive use of such designation as a trade name. Their rights are under the patent, and expire with it. The specific designation falls into the public domain.
In Singer Manuf'g Co. v. Riley et al., 11 Fed. Rep., 706, the question arose, whether that company had an exclusive property or trade name in the word Singer. The language of the court commends itself to the legal judgment. “ It is *136 the consideration now due to the public, when the patents have expired, that it shall have the unobstructed benefit of these inventions, and there is not the least foundation in principle or reason, for allowing the patentees to continue to enjoy as much of the monopoly, as they can save by the claim to use exclusively the trade names, by which they identified and secured to themselves the reputation of their inventions. These go along with the invention, as a dedication to the public for purposes of description and identification.”
In Singer Manuf'g Co. v. Larson, 8 Biss. C. Ct., 151, it was held, that if a sewing machine has acquired a name which designates a mechanism or a peculiar construction, parts of which are protected by patents, other persons, after the expiration of the patents, have the right to construct the machine and call it by that name, because the name expresses only the kind and quality of the machine. Indeed, it is an elementary principle, that every one has the right to make and vend any wares not protected by patents; and it is now well settled, that a manufacturer of a patented article, after the patent has expired, has the right to represent that it was made according to the patent, and to use the name of the patentee for that purpose. Wilcox & Gibbs Sewing Machine Co. v. Gibbons Frame, 17 Fed. Rep., 623.
The original petition in this case alleges, that Brill, the defendant therein, in violation of the rights of the Singer Manufacturing Company, the plaintiff, was then and for some time past had been engaged in selling sewing machines not manufactured by the plaintiff, but having the form, shape, outline, ornamentation and appearance of machines of the plaintiff’s manufacture, which he was then selling as “ Singer Sewing Machines,” and “ English Singer Sewing Machines,” and under other colorable imitations of the trade-name Singer. It is further alleged, that the defendant was then advertising such machines by means of cuts and prints which are imitations of plaintiff’s cuts and prints, and which are representations of machines of the plaintiff’s manufacture; .and that the defendant in other ways was *137 then giving out and representing that the sewing machines which, he was selling were manufactured by the plaintiff, whereas in truth they were not.
The trade-mark adopted by the Singer Company and placed at the base of the arm of the “New Family Machine,” which it manufactures, consists of an oval brass plate, containing in its center the letter S, and in the center of that a shuttle, needles crossed, and two transverse lines, representing thread. Circling over this, at the top, were the words “ Singer Manufacturing Co., N. Y.,” and below, the words “ Trade-Mark,” and a circular wreath representing flowers or plants. It is sought by blending the name Singer with the trade-mark, to perpetuate an exclusive property in the name after the life of the Singer patents. But, a patentee or his assignee, by incorporating into his trademark the distinctive name by which a patented machine has become known to the public during the existence of the patent, cannot, after the expiration of the patent, take away from the public the right of using such name. The trade-mark cannot be made a guise for extending the monopoly, or preventing the name from becoming with the patent the property of the public. Singer Manufacturing Co. v. Riley, supra.
The Singer Manufacturing Company had become the proprietor of, or interested in several patents for improvements upon the machines manufactured and sold by it; but, the patents had expired a long time prior to the alleged acts which are subjects of complaint. An injunction, however, coextensive with the prayer in the plaintiff’s petition was granted, and the defendant was perpetually enjoined, not only from using the name Singer, but from selling sewing machines having the external appearance, shape, or ornamentation of the machines of plaintiff’s manufacture; and also from using a trade-mark, which imitates the trademark used by plaintiff, in size, color, shape and general-' appearance.
While there may be a similitude in form and finish between the machines made by the defendant in error, and *138 the “ English Sewing Machine ” sold by Brill, as the general agent of the Williams Manufacturing Company of Montreal, we think, there should not have been an injunction granted against that company’s introducing their machines to the public, in the habiliments which they saw fit to adopt. Where machines during the time they are protected by a patent, become known and identified in the trade by their shape, external appearance or ornamentation, the patentee, after the expiration of the patent, cannot prevent others from using the same modes of identification in machines of the same kind, manufactured and sold by them. It is not claimed that the shape, ornamentation or external appearance of the machines made by the Singer Manufacturing Company were protected by any patent for a design, nor could these insignia find protection under any of the Singer patents which had expired. Of the patents which the Singer Manufacturing Company owned or became interested in, and of the external appearance, shape or ornamentation of its machines, it may be said, as was said by the court in Fairbanks v. Jacobus, 14 Blatchf., 337, “ Their patents, while they existed, protected them in the essential structure of their invention, but the exterior form, painted color, and such non-essentials were not, and could not be, the subject of the.patents, and the patents did not, and could not, secure these to the plaintiff. Much less could these be secured as a trade-mark, for, a trade-mark is always something indicative of origin or ownership, by adoption and repute, and is something different from the article itself which the mark designates. An invention of structure a patent for the invention secures; a design is secured by a patent for that. Apart from these, any one may make anything in any form, and may copy with exactness that which another has produced, without inflicting any legal injury, unless he attributes to that which he has- made a false origin, by claiming it to be the manufacture of another person.” At common law, the form, ornamentation or external appearance of the machines, would be open to all as modes of designation or identification. In the case at *139 bar, they are accompaniments which serve to identify machines of a certain kind and quality, without reference to the manufacturer; and when the patents covering the machines expired, they should not, any more than the name Singer, be made the means of continuing the monoply under the cover of a quasi trade-mark or symbol.
As to the complaint, that the agents of the Williams Manufacturing Company have been engaged in selling machines made by that company as and for machines manufactured by the Singer Manufacturing Company, it is the undoubted right of every man who is known to the public as the favorite manufacturer of any article, that another shall not make and vend the same article, and palm it off as the production of the first maker. As said by Lord Blackburn in Singer Manuf'g. Co. v. Loog, supra, “the original foundation of the whole law is this, that when one knowing that goods are not made by a particular trader, sells them as and for the goods of that trader, he does that which injures that trader.” If he sells wares of as good quality, he impairs the patronage of the trader under a false pretence; and if he sells wares of an inferior quality, he injures the good will and reputation of the trader’s business. But, upon a review of all the testimony, we have been unable to discover any deception practiced by means of any business card, advertisement, circular or other publication, by which the machines of the Williams Manufacturing Company have been put upon the market, as having been manufactured by the Singer Manufacturing Company. On one business card, Brill, the general agent, plainly publishes the “ English Singer Sewing Machine ” as manufactured in Montreal, Canada; and the factory of the “ Ger. man Singer Sewing Machine ” is, on another card, represented as located at Kaiserslautern, Germany; and Kaiser Brothers are held out as the manufacturers. No purchaser of ordinary intelligence would be likely to be deceived as to the manufacturer, or the place where manufactured. And the word Singer, though used in their cards, circulars and newspaper advertisements, nowhere appears upon the *140 machines manufactured by the Williams Manufacturing Company.
It is said, however, that the trade-mark of' the Williams Manufacturing Company, is such an imitation of that adopted by the Singer Manufacturing Company, .as to be easily mistaken for it by purchasers. How far the similarity is likely to deceive, must be determined, not by the impression made upon a heedless and inobservant buyer, but upon one of at least ordinary intelligence and observation. To entitle a complainant to relief against a colorable imitation of a trade-mark, he must clearly show not only a property right in himself, but also that the resemblance between the original and the imitation is such as would mislead persons purchasing with ordinary caution. Robertson v. Berry, 50 Md., 591. We do not think that the trademark used by the Williams Manufacturing Company — being an oval metallic plate with a lion’s head in bold relief, surrounded by the words “ Williams M’f’g. Co., Montreal ” and “ Trade-Mark ” is of a character that would mislead purchasers of ordinary caution. In Singer Manuf'g. Co. v. Riley, supra, the court in passing upon an alleged violation of the trade-mark of the Singer Manufacturing Co. of New Jersey, held that the shuttle device, as a trade-mark, had not been violated by the device used on the Williams machine of Montreal — the alleged imitation not being calculated to .deceive a purchaser.
Whatever foundation there may be for an action in damages, we do not think, that an injunction was warranted against Brill, the plaintiff in error, by reason of the testimony of witnesses who had purchased machines from his agents, and who were called to prove the verbal representations of such agents, that the sewing machines sold by them were of the Singer Company’s manufacture. There is evidence, that those agents dealt not alone in the “ English Singer Sewing Machine,” but in the different varieties of sewing machines'known to the trade; but, whether they dealt in other machines or not, we find no evidence that the plaintiff in error authorized, any false representations, ver *141 bal or otherwise, to be made by his agents as to who were the manufacturers of the Williams machines.
The judgment of the superior court we think should be reversed. The injunction granted against the plaintiff in error should be dissolved, and the action of the Singer Manufacturing Company'dismissed.

Judgment accordingly.